**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re RICKY T. CLARK and CAROL D. CLARK, | ) Case No. 10-63514-LYN ) ) |
| Debtors, | ) ) |

## MEMORANDUM

This matter comes before the court on a supplemental application for compensation by Stephens, Boatwright, Cooper and Coleman, PC, ("the Law Firm") for services rendered by Scott J. Newton, Esq., ("Counsel") counsel for Ricky T. Clark and Carol D. Clark ("the Debtors"). After considering the arguments of the parties and the evidence presented the Court makes the following findings of fact and conclusions of law.

*Jurisdiction*

This court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). This court may enter a final order. This memorandum shall constitute the court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

*Facts*

On December 9, 2010, the Debtors filed a chapter 13 petition. The schedules disclosed that the Law Firm had received $2,576.00 from the Debtors prepetition. The schedules also disclosed

1

that the Debtors have paid the Law Firm $274.00 for the filing fee.

On January 9, 2011, the Law Firm filed an application for compensation. Through the motion, the Law Firm seeks additional fees in the amount of $9,572.50 and additional expenses in the amount of $429.00. These amounts do not include $2,500.00 in fees and $350.00 in costs already paid to the Law Firm. In all the Law Firm seeks fees in the amount of $12,072.50 and costs in the amount of $779.00

*Discussion*

A court may award to a professional person reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses. 11 U.S.C. § 330 (a)(1)[1]. The court may award compensation that is less than the amount of compensation that is requested. 11 U.S.C. § 330(a)(2). In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant

---

[1] Section 330(a) provides

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103--
(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
(B) reimbursement for actual, necessary expenses.
(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.
(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
(A) [so in the original] the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

factors, including (1) the time spent on such services; (2) the rates charged for such services; (3) whether the services were beneficial at the time at which the service was rendered toward the completion of a bankruptcy; (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (5) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330(a)(3).

Bankruptcy Courts in the Western District of Virginia authorize compensation to attorneys on the basis of a standard "no-look" fee in Chapter 13 cases. The Law Firm seeks compensation on the basis of the lodestar method.

A.

As of the date that the Debtors filed their petition, this court allowed a no-look fee in the amount of $2,750.00. As will be seen, no-look fees are permissible, are employed nation wide, are necessary for efficiency reasons, reflect the market rate in this division, and are consistent with the statutory standard.

The Law Firm asks the court to make the award based on a lodestar analysis. Courts, however, are not required to award fees based on a lodestar calculation. See, e.g., In re Citation Corp., 493 F.3d 1313, 1320 (11th Cir. 2007). ("Therefore, it is appropriate, but not required, for a bankruptcy court to use a lodestar analysis to review an investment bank's fees for reasonableness.") No-look fees are permissible. See In re Geraci, 138 F.3d 314 (7th Cir.1998) (Establishing presumptive fees in chapter 7 cases are permissible.).

Nor are no-look fees unusual. No-look fees are awarded in Chapter 13 cases by the

overwhelming majority of American bankruptcy courts. In 2010, 80 of 92 Federal Districts surveyed awarded no-look fees in Chapter 13 cases.

No-look fees are also necessary for efficiency reasons. If no-look fees were not used, courts would be required to monitor fee applications.[2] Doing so would consume an inordinate amount of court time. During 2010 alone, 1481 Chapter 13 petitions were filed with the Clerk of the Court in the Lynchburg Division. If the court could review and process one fee application every 30 minutes, monitoring fees would consume no less than 92 days per year, or 35% of the court's time.

Further, the no-look fee in this division reflects the standard set forth in Section 330(a)(3). While each Chapter 13 case may have some nuance, virtually all consumer bankruptcy cases concern the same set of tasks at approximately the same level of complexity. Consequently, they should consume approximately the same amount of time and should command approximately the same amount of skill and experience on the part of the attorney.

The fixed no-look fee awarded by this court in Chapter 13 cases is reasonable and reflects the market rate for Chapter 13 fees in this division. The fee amount is based upon an experience with Chapter 13 cases that spans more than three decades. If the fees allowed for attorney services in this division were below the market rate, there would be a shortage of bankruptcy attorneys in the marketplace. During the last ten years, more than 12,000 Chapter 13 petitions were filed with the Clerk of the Court in the Lynchburg Division. More than 95% were filed through counsel. This Court knows of no Chapter 13 debtor who sought and could not find the services of a competent bankruptcy attorney during that time. This is strong evidence that

---

[2] There can be no doubt that monitoring would be necessary. The case at bar proves that point.

the allowed no-look fee in this division represents a market rate.

Nor is it relevant if the Debtors agreed to pay the fees that are requested. That agreement is not determinative. "[R]easonable value is not . . . always the price that a willing debtor has agreed to pay a willing attorney in the marketplace, for by enacting sections 329 and 330 of the Code, Congress placed limits on the role the market will be permitted to play in setting professional fees in bankruptcy cases." In re Geraci, 138 F.3d 314, 320 (7th Cir. 1998). (Citing In re Kenneth Leventhal & Co., 19 F.3d 1174, 1178 (7th Cir. 1994).

The prosecution of this case required little more than the filing of a petition and concomitant pleadings, and a Chapter 13 plan. There was one adversary complaint filed, a lien avoidance action to which no response was filed and which was resolved by a consent order.

The only anomaly in this case was the fact that Mrs. Clark passed away during the pendency of this case which necessitated the filing of amended schedules. While there were eight confirmation hearings, it is the belief of the court that the majority of those hearings were necessitated by the failure of counsel to timely respond to the concerns of the Chapter 13 trustee

On average, the no-look fee in this division reflects the market rate for Chapter 13 legal fees. Further, this court permits counsel to file a fee application if the Chapter 13 case requires significantly more than the average range of legal services. This is not such a case. The no-look fee of $2,750.00, adjusted upward in the amount of $250.00 for work required by the passing of Mrs. Kirby is appropriate. Fees will be allowed in the amount of $3,000.00 including the amount of $2,576.00 which the Debtors have already paid. Costs will be allowed in the total amount of $779.00, including the $350.00 already paid. The Law Firm shall be allowed additional fees in the amount of $424.00 and additional costs in the amount of $429.00.

B.

Calculating the lodestar amount involves a two-step process, in which courts first determine the reasonable number of hours expended and then multiply that number by the appropriate hourly billing rate. The resulting figure is the allowable amount of compensation. 3 Collier on Bankruptcy, "Compensation of Officers", ¶ 330.04[3][c], p. 330-38 (15th ed. rev.).

The Supreme Court has promulgated twelve factors for courts to consider in evaluating fee applications. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). The twelve factors identified in Johnson which should guide a trial court's discretion in calculating a fee award are as follows:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to properly perform the legal service;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client;  and

(12) awards in similar cases.

Johnson, 488 F.2d at 717-19.  The Fourth Circuit has adopted the twelve Johnson factors.  Barber

v. Kembrell's Inc., 577 F.2ed 216 (4th Cir. 1978). The Fourth Circuit has specifically adopted the Johnson factors for use in determining fee awards under section 330(a) to professionals in bankruptcy cases. Cf. Harman v. Levin, 772 F.2d 1150, 1152 (4th Cir. 1985) (Citing 2 Collier on Bankruptcy § 330.05, at 330-18 (15th ed. 1983) for the proposition that the Johnson "factors remain applicable to the determination of the reasonableness of fees awarded under the Code".)

The method by which the Johnson factors have been employed in the analysis of fee applications in the Fourth Circuit has changed over time. In 1980, the Fourth Circuit rendered an opinion instructing trial courts to:

> first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially Johnson factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affected the award.

Anderson v. Morris, 658 F.2d 246, 249 (4th Cir. 1980) (Citing In re First Colonial Corp. of America, 544 F.2d 1291, 1298-1300 (5th Cir. 1977).

In 1984, the Supreme Court overruled this aspect of Anderson. See Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891(1984). In 1986, the Fourth Circuit discussed at length the analysis of the Supreme Court in Blum. The court concluded that the lodestar amount of attorney fees is the reasonable amount if the Johnson factors are properly considered and applied to the analysis.

> While the Supreme Court continues to endorse use of the Johnson factors in calculating fee awards, Blum, 104 S.Ct. at 1548, the Court has disapproved of the procedure endorsed by this court in Anderson. Out of a concern that upward adjustments of a lodestar figure can sometimes result in "double counting," id. at 1549, the Court has suggested that most Johnson factors are appropriately considered in initially determining the lodestar figure, not in adjusting that figure upward. According to the Court, "the critical inquiry in determining

> reasonableness [of a fee award] is now generally recognized as the appropriate hourly rate." Blum, 104 S.Ct. at 1547 n. 11.  If the hourly rate is properly calculated, "the 'product of reasonable hours times [the] reasonable rate' normally provides a 'reasonable' attorney's fee within the meaning of [the applicable statute under which fees were awarded]." Id. at 1548 (quoting Hensley, 461 U.S. at 434, 103 S.Ct. at 1940).

Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986).[3]  The court continued noting that:

> . . . as a general rule, the novelty and complexity of a lawsuit will be reflected in the number of billable hours.  Where an experienced attorney spends fewer hours on a complex case due to special expertise, that "special skill and experience should be reflected in the reasonableness of the hourly rates.  Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award." [Blum] at 1549.  Similarly, " 'quality of representation' ... generally is reflected in the reasonable hourly rate." Id.

Daly 790 F.2d at 1078. The court concluded by stating that a fee that is based on the lodestar amount, reasonable hours times a reasonable rate, "is presumed to be fully compensatory without producing a windfall." Id.  The lodestar fee is now the proper focus of the entire Johnson analysis in most cases. Id.

The application before the court could not be granted as filed.  First, the hourly rate is not one that the court would award counsel.   Second, not all time would be allowed.

Counsel's hourly rate is higher than this court would allow.  Counsel asserts that his proper billing rate is $275.00 per hour.   An attorney's billing rate is determined by the market rate for an attorney of equal experience given the complexity of the services rendered.  This court believes that the rate of $275.00 per hour is high for bankruptcy attorneys in the Western District of Virginia of equivalent experience .  This belief is supported by the following survey[4] of some other attorneys

---

[3] Blum and Daly are civil rights cases, but this court has no reason to believe that either the Supreme Court or the Fourth Circuit would vary its analysis when considering an award of fees to a professional providing services in a bankruptcy case

[4] This survey was conducted randomly by the court using the data base available to it in CM/ECF.

in the district.

| No. | Date | Area of Practice | Experience | Hourly Rate |
|---|---|---|---|---|
| 1 | June, 2011 | Att for Trustee | 35 Years | $195.00 |
| 2 | June, 2011 | Att for Trustee | 10 Years | $195.00 |
| 3 | January, 2011 | Att for Trustee | 18 Years | $275.00 |
| 4 | January, 2011 | Att for Trustee | 6 Years | $200.00 |
| 5 | April, 2011 | Chapter 11 | 31 Years | $275.00 |
| 6 | April, 2011 | Chapter 11 | 23 Years | $275.00 |
| 7 | April, 2011 | Chapter 11 | 30 Years | $275.00 |
| 8 | April, 2011 | Chapter 11 | 27 Years | $275.00 |
| Avg. | | | 22.5 Years | $245.63 |

There are at least five attorneys with more than 20 years experience that are currently billing at an hourly rate that is less than $300.00. Four of those attorneys bill a lower rate for services rendered in Chapter 11 cases, which are generally more complicated than Chapter 13 cases. It is concluded from this survey and from this Court's experience that an appropriate hourly rate for Counsel would be in a range from $200.00 to $225.00.

We turn now to the number of allowable hours. It is only necessary to examine the time sheets generally to demonstrate that the application is beyond the pale. First, Counsel billed $4,400.00 for attending three court hearings and the first meeting of creditors. Fully one-half of the time billed was for travel to and from the hearings. This court has long had a policy of not allowing compensation for travel time in Chapter 13 cases. The purpose of this policy is to give counsel an incentive to specialize in the area of bankruptcy and thereby create the efficiencies derived from economies of scale. As noted by the trustee, the $1,100.00 for each trip to court is fairly compared to the $100.00 that was paid to another attorney for standing in for Counsel at one of the Debtors'

hearings.

Second, Counsel billed 3.9 hours, $1,072.00, for drafting an elementary unopposed lien avoidance complaint. Such pleadings are generally so formulaic that compensation for attending to them is included in the no-look fee.

Finally, counsel spent 23.45 hours, billed at $6,448.75, for the preparation and filing of the initial petition and plan. This work should have taken no more than 10-12 hours for an unextraordinary case such as this.

Counsel asserts that this case was novel and difficult because Mrs. Clark had passed away during the pendency of the case, and more specifically, during the confirmation process. He further asserts that this was "the driving force behind the necessity of the final four (4) amended Chapter 13 Plans." The death of Mrs. Clark was a single definable event. It is unclear how one event could require four separate amended plans. Counsel further asserts that it was necessary "to research and determine if the case could even proceed in light of Mrs. Clark's passing." The Court disagrees. The matter could have been resolved by a reference to Fed.R.Bankr.P. 1016, a conversation with Mr. Clark concerning whether he wished to continue the case, and perhaps some communication with Chapter 13 trustee. This is true especially in light of the fact that the continuation of the case was not opposed by the trustee or any other party in interest.

*Conclusion*

The fee application is for $12,072.50, an amount that is more than four times the no-look fee of $3,000.00[5] allowable in this case. There is nothing extraordinary about this case. The no-look fee of $2,750.00, adjusted upward by $250.00, is appropriate.

---

[5] This includes with the adjustments made necessary by the passing of Mrs. Clark.

## **ORDER**

The law firm of Stephens, Boatwright, Cooper and Coleman, PC, shall be, and hereby is, allowed fees in the amount of $3,000.00 including the amount of $2,576.00 which has been paid by the Debtors, and costs will be allowed in the total amount of $779.00, including the $350.00 already paid. The Law Firm shall, therefore, be paid additional fees in the amount of $424.00 and additional costs in the amount of $429.00.

So ORDERED.

Upon entry of this Memorandum and Order the Clerk shall forward copies to Scott J. Newton, Esq., attorney for the debtors, the Chapter 13 trustee, and the United States trustee.

Entered on this  8th  day of March, 2012.

_____
William E. Anderson
United States Bankruptcy Judge